IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| OMAR PINKY<br>MONTEZANO MARTINEZ, | ) | |
| | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:25-cv-2274 (AJT/IDD) |
| | ) | |
| PAUL PERRY, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**ORDER**

Before the Court is Omar "Pinky" Montezano Martinez's ("Petitioner") Petition for Writ

of Habeas Corpus, [Doc. No. 1] (the "Petition"), seeking release from Immigration and Customs

Enforcement ("ICE") custody and arguing that her ongoing detention violates the Immigration

and Nationality Act 8 U.S.C. §1101 *et seq.* and her fifth amendment substantive and procedural

due process rights. Upon consideration of the Petition, the memoranda in support thereof [Doc.

No. 21] and opposition thereto [Doc. No. 6], and for the reasons stated herein, the Petition is

**GRANTED**.

## I.    BACKGROUND

Petitioner is a 44-year old native and citizen of Mexico who first entered the United

States with her family in or around 1996, while still a minor and evidently without inspection by

immigration officials. [Doc. No. 1] ¶ 34. Petitioner graduated from high school in Georgia, but

was deported in 2016 after a determination by the Department of Homeland Security ("DHS")

that she was removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). *Id*. ¶ 35; [Doc. No. 1-1] ¶ 6;

[Doc. No. 17-2] ¶ 8. After facing gender-based violence in Mexico due to her identity as a transgender woman, she reentered the United States without inspection in or around September 2022, allegedly planning to seek asylum. [Doc. No. 1-1] ¶ 45; [Doc. No. 17-2] ¶ 10. She was apprehended by border patrol and ultimately transferred directly into ICE custody at the Caroline Detention Facility in Bowling Green, Virginia (within this judicial district), where she remains. [Doc. No. 1] ¶ 40; [Doc. No. 17-2] ¶ 11. ICE attempted to reinstate Petitioner's prior removal order, but she requested and passed a credible fear interview based on her fear of continued gender-based persecution in Mexico. [Doc. No. 17-2] ¶¶ 12-14. On or around August 1, 2024, Petitioner applied for withholding of removal under the U.N. Convention Against Torture ("CAT"), which relief was granted by an Immigration Judge on January 28, 2025 along with an order of removal which became administratively final on February 27, 2025. *Id*. ¶¶ 15-18.

Respondents represent that they have attempted to effectuate Petitioner's removal by submitting Form I-241 requests for travel documents to three countries: Guatemala, Ecuador, and Colombia.[1] *Id*. ¶ 22. All three countries declined. *Id*. Respondents fail to identify any specific additional steps that ICE have taken in the year that has elapsed since those initial requests, but nonetheless claim that they are "actively working on Petitioner's removal to a third country" and that "there is significant likelihood of Petitioner's removal in the reasonably foreseeable future." *Id*. ¶ 23. ICE has held multiple "Post Order Custody Reviews" during which it determined that

---

[1] "[T]the Secretary retains discretion to remove an alien to any country described" in the INA." 8 C.F.R. § 241.15(a).The INA designates the following countries as possible places to which an alien can be removed: (i) the country of which the alien is a citizen, subject, or national; (ii) the country in which the alien was born; (iii) the country in which the alien has a residence; (iv) a country with a government that will accept the alien into the country's territory if removal to each country described in a previous clause of this subparagraph is impracticable, inadvisable, or impossible. 8 U.S.C. § 1231(b).

Petitioner would remain detained based on her initial order of removal under 8 U.S.C. 1227(a)(2)(A)(iii). *Id.* ¶¶ 20-21.

## II.   LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts and dispose of the matter as law and justice require." 28 U.S.C. § 2243. "[T]he heart of habeas corpus," the Supreme Court has noted, is to allow a detainee to "challeng[e] the fact or duration of her physical confinement," and to "seek[] immediate release or a speedier release from that confinement." *Preiswer v. Rodriguez*, 411 U.S. 475, 498 (1973).

8 U.S.C. §1231(a) requires the government to detain noncitizens during the "removal period," which is defined as the 90-day period during which "the Attorney General shall remove the alien from the United States." 8 U.S.C. §1231(a)(1)(A). That period commences upon one of three occasions: "(i) The date the order of removal becomes administratively final; (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §1231(a)(1)(B). Detention after the end of the removal period is governed by 8 U.S.C. § 1231(a)(6), which states that inadmissible or criminal aliens "may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision."

In *Zadvydas v. Davis*, the Supreme Court held that detention pursuant to Section 1231(a)(6) is subject to an implied reasonableness standard whereby more than six months of

detention is presumptively unconstitutional and habeas relief is proper – so long as the petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. 678, 701 (2001). With respect to the absence of a significant likelihood of removal, a petitioner must make a *prima facie* showing to that effect, which the Government may then rebut with sufficient evidence. *Id.*; *see also Menghua Wan v. Crawford*, No. 1:13-cv-1473 (JCC), 2014 WL 970180, at *3 (E.D. Va. Mar. 12, 2014).

### III.    DISCUSSION

There is no dispute that Petitioner has been detained significantly longer than the presumptively-reasonable six month period under *Zadvydas*. [Doc. No. 17] at 12. The dispositive issue is therefore whether Petitioner has shown good reason to believe that there is no significant likelihood of her removal in the foreseeable future. As outlined above, if Petitioner makes a prima facie showing that her removal is unlikely in the foreseeable future, the government must rebut that with sufficient evidence in order for any further detention to be constitutional. *Zadvydas,* 533 U.S. at 701.

The *Zadvydas* framework "provides the sole recourse available to a § 1231 detainee challenging his detention on due process grounds." *Castaneda v. Perry,* 95 F.4th 750, 760 (4th Cir. 2024). But what constitutes a sufficient showing of unforeseeability is not settled. Some courts have opined that "[s]uccessful petitioners under the *Zadvydas* framework prototypically include persons whom the government is unable to remove, or persons who are left in a removable-but-unremovable limbo," *Euceda v. Evans*, No. 1:17-CV-256(LMB/JFA), 2017 WL 1534197, at *4 (E.D. Va. Apr. 24, 2017) (*citing Jama v. ICE*, 543 U.S. 335, 347 (2005) (cleaned up); but others caution that so long as "[p]rogress, however slow, is being made" toward removal, detention under section 1231 is constitutional. *Khan v. Fasano*, 194 F. Supp. 2d 1134,

4

1137 (S.D. Cal. 2001). And the Fourth Circuit recently considered the extent to which that required showing can be made within the context of "withholding-only proceedings" after post-removal order detention, that is, whether on-going proceedings to withhold removal are sufficient to show that removal is not foreseeable and concluded that "ongoing withholding-only proceedings alone are insufficient to demonstrate that removal is no longer reasonably foreseeable . . . [because] if [the petitioner] does succeed, nothing would prevent ICE from removing her to another country." *Castaneda v. Perry,* 95 F.4th 750, 758 (4th Cir. 2024); *see also Euceda,* 2017 WL 1534197, at *5 ("[I]f such [withholding proceeding-related] delays were sufficient to trigger *Zadvydas*, many if not most BIA matters would be subject to parallel proceedings in district courts, given the processing times associated with such proceedings").

However, this Court, as well as others within the Fourth Circuit, have tended to order a petitioner released where removal to their native country has already been withheld and immigration officials have engaged in protracted third-country removal efforts with no success and uncertain prospects. *See Divafkan v. Lyons,* No. 1:25-cv-02242 (E.D. Va. Jan. 20, 2026) (ordering release petitioner who obtained withholding when two I-241 requests were denied and one was outstanding)*; see also Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *8 (D. Md. Sept. 8, 2025). In *Banoub v. Crawford,* respondents, like here, had made requests to three countries, at least one of which was declined, but unlike here at least one I-241 request remained outstanding at the time that case was decided. No. 3:25CV917, 2025 WL 3723458, at *9 (E.D. Va. Dec. 23, 2025). In concluding that release based on *Zadvydas* was warranted, the Court acknowledged the holding in *Castaneda* that ongoing withholding-only proceedings alone are insufficient to demonstrate that removal is no longer reasonably foreseeable, but noted that "[a] *grant* of withholding of removal substantially increases the difficulty of removing an

individual," and may even constitute 'strong evidence' that removal is unlikely to occur in the reasonably foreseeable future. *Id.* (*quoting Zavvar,* 2025 WL 2592543, at *7) (emphasis added). The Court ordered release even though the Respondents introduced evidence that they were actively pursuing removal to a specific "fourth" country by way of a "Third Country Removal Agreement"–a much more particular allegation of ongoing removal efforts than Respondents make here. *Id.* at *4.

Respondents' only asserted basis for claiming that Petitioner is not entitled to *Zadvydas* relief at this point is their claim that there continues to exist significant likelihood of her removal in the foreseeable future. But the current record belies any such claim and presents at least as strong a showing of non-foreseeability as in *Banoub,* given that all three I-241 recipients have declined to accept the Petitioner, with no additional countries identified as likely recipients. Further, as Respondents admit ([Doc. No. 17] at 15), Petitioner will be entitled to a reasonable fear interview as to any future third country of removal, which may not independently constitute a basis for *Zadvydas* relief, but nevertheless inherently undercuts any claim that removal is foreseeable, particularly given the relief she has already received and the nature of her reasonable fear claim. Petitioner is therefore entitled to immediate release.[2]

### IV. CONCLUSION

As detailed above, Petitioner has been in detention for the purposes of removal pursuant to a final order of removal since February 27, 2025, a period of more than eleven months and therefore for a period beyond the presumptively-reasonable six month period established under *Zadvydas.* She has also made the required prima facie showing that there is good reason to

---

[2] Because the Court finds that *Zadvydas* is satisfied, it need not consider Respondents' arguments regarding whether additional process is due.

believe that there is no significant likelihood of removal in the reasonably foreseeable future; and Respondents have failed to present evidence sufficient to rebut that showing.[3] Her continued detention is therefore unconstitutional and is unlawful under *Zadvydas.* The Court has jurisdiction under 28 U.S.C. § 2241 to address Petitioner's detention[4] and it is hereby

**ORDERED** that the Petition is **GRANTED** and that Respondents immediately release Petitioner under an Order of Supervision pursuant to § 1231(a)(3); and it is further

**ORDERED** that Respondents and any of Respondents' officers, agents, servants, employees, and attorneys, as well as other person acting in concert, are **ENJOINED** from re-detaining Petitioner except upon a showing of sufficient changed circumstances with respect to the prospects for removal to a qualifying consenting country;[5] and it is further

**ORDERED** that Respondents file a status report with this Court within three days stating whether Petitioner has been released and if not, why not; and it is further

---

[3] Based on that detention, Petitioner seeks the following relief:
      a. Assume jurisdiction over this matter;
      b. Declare that her continued detention violates the Immigration and Nationality Act, the Due Process Clause of the Fifth Amendment of the United States Constitution, and the Administrative Procedure Act;
      c. Order her immediate release;
      d. In the alternative, order a custody hearing, at which Respondents shall bear the burden to establish a lawful basis for her continued detention;
      e. Award her costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412, or other statute;
      f. Grant such relief as the Court deems just and proper.
[4] *See Luna Quispe v. Crawford,* No. 1:25-CV-1471, 2025 WL 2783799, at *2–3 (E.D. Va. Sept. 29, 2025) (concluding that neither 8 U.S.C. §§ 1252(b)(9) nor 1252(g) divests this Court of jurisdiction to review the legality of a habeas petitioner's detention),
[5] *See Doe v. Smith*, No. CV 18-11363-FDS, 2018 WL 4696748, at *9 (D. Mass. Oct. 1, 2018) (alien who had previously obtained *Zadvydas* relief could be re-detained due to changed circumstances rendering her removal significantly likely in the near future).

7

**ORDERED** that Petitioner's request for attorney's fees and costs under the Equal Access to Justice Act, as amended, 28 U.S.C. § 2412, or on any other basis justified under law, is **DENIED**.[6]

The Clerk is directed to send copies of this Order to all counsel of record.

Alexandria, Virginia
February 6, 2026

Anthony J. Trenga
Senior United States District Judge

---

[6] *See Obando Segura v. Garland*, 999 F.3d 190, 195 (4th Cir. 2021) (a habeas petitioner has no cognizable claim for attorney's fees under the Equal Access to Justice Act ("EAJA") because a habeas proceeding is not a "civil action" under the EAJA; *Luna Quispe*, 2025 WL 2783799, at *6.

8